UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SENSATIONS, INC. et al.,

       Plaintiffs,                             FILE NO. 1:06-CV-300

v.                                          HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS,

       Defendant.

**CONSOLIDATED WITH**

LITTLE RED BARN ADULT
THEATRE & BOOKSTORE, INC.,

       Plaintiff,                             FILE NO. 4:06-CV-60

v.                                          HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS, et al.,

       Defendants.

_____/


**OPINION DENYING PRELIMINARY INJUNCTION**

      These consolidated matters are before the Court on the motion for continuation of stay of enforcement filed by Plaintiff Little Red Barn Adult Bookstore & Theatre (Docket #32) and joined by Plaintiffs Sensations, Inc. and Lady Godiva's, Inc. (Docket #36). On August 24, 2006, in conjunction with its hearing on Defendants' motions to dismiss, the

Court heard oral argument on the motion for continuation of the stay of enforcement, construed as a motion for preliminary injunction. For the reasons that follow, and for the reasons stated on the record in open court, the Court will deny Defendants' motion for preliminary injunction.

I.

On April 25, 2006, the City of Grand Rapids adopted Ordinance 2006-23, which was made part of the Grand Rapids City Code at Sec. 9.140. The Ordinance purports to be a zoning ordinance that imposes time, place and manner restrictions on sexually oriented businesses, as defined in the statute, expressly for the purpose of controlling the secondary effects of such businesses. The Ordinance adopts and incorporates its findings and legislative record related to adverse secondary effects of sexually oriented businesses, including judicial opinions and their supporting reports. The legislative record also includes a series of affidavits by investigator Tim Reilly, recording his observations at numerous sexually oriented businesses, including Little Red Barn and Sensations. His observations include evidence of sexual fluids on the walls and surfaces of closed peep show booths, as well as evidence of sexualized physical contact between patrons and performers at live show settings. The entire legislative record is codified in Section 5.283 of the City Code.

In Section 1(b)(i) of the Ordinance, the Grand Rapids City Commission made specific findings that sexually oriented businesses "are often associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution,

2

potential spread of disease, lewdness, public indecency, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation."  The Commission also found that illegal and unsanitary acts occur at unregulated sexually oriented businesses. Ordinance No. 2006-23, Sec. 1(b)(ii). Further, the Commission found that the noted secondary effects constitute a harm that the City has a substantial governmental interest in preventing and/or abating.  Ordinance No. 2006-23, Sec. 1(b)(iii).

The Ordinance has four principal restrictive components: (1) a prohibition on total nudity; (2) regulations on partial nudity (*i.e.*, female performers wearing pasties and a G-string), including a six foot buffer zone between performers and patrons and a no-touch rule; (3) an open-booth rule for adult arcades; and (4) a restriction on the hours of operation between 2:00 a.m. and 7:00 a.m.  The Ordinance contains a 180-day grace period for existing businesses to modify and comply, as well as a scienter requirement for any violation.

After filing, the parties stipulated to a temporary restraining order that expired on July 14, 2006.  The temporary restraining order was extended by stipulation until August 25, 2006.  The Plaintiffs have moved for continuation of the stay of enforcement for the entire period in which the action is pending.  The Court construes Plaintiffs' motion as one for preliminary injunction.

## II.

In reviewing a request for a preliminary injunction, a court must consider and weigh four factors: (1) whether the plaintiff has established a substantial likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *See Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000) (evaluating request for preliminary injunction in context of sexually oriented business licensing scheme). "In cases involving the First Amendment, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because, as in this case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Id.*

As it stated on the record of the August 24, 2006 hearing, the Court finds that Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits. "[A] court should approach the idea of invalidating a local ordinance with caution, particularly if there is no suggestion that the government's promulgation of the ordinance was 'palpably false.'" *Pagan v. Fruchey*, 453 F.3d 784, 790 n.5 (6th Cir. 2006) (quoting *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 109 (1949)). In the instant case, no challenge has been raised to the manner in which the Ordinance was promulgated. The Ordinance was adopted in accordance with customary practices and procedures. As a result, the Court will not lightly impede enforcement of the City's legislative enactment.

The Supreme Court repeatedly has held that local governments have an "undeniably important" interest in combating the adverse secondary effects of sexually oriented businesses. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 296 (1977). Under well settled law, a local ordinance is constitutional if it satisfies a four-pronged inquiry: (1) the regulation is within the government's authority: (2) it serves a substantial government interest; (3) the interest is unrelated to the content of speech; and (4) the regulation is narrowly tailored – *i.e.*, not substantially broader than necessary – to serve the interest. *Deja Vu of Cincinnati v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 789 (6th Cir. 2005); *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 410 n.6 (6th Cir. 1997) (noting that such regulations should be judged under the standard for time, place or manner restrictions).[1] Plaintiffs cannot demonstrate a substantial likelihood of proving any of the four elements.

With respect to the first prong of the inquiry, no genuine issue exists that the Grand Rapids City Commission had the authority under Michigan law to adopt an ordinance regulating sexually oriented businesses. The City of Grand Rapids is a home rule city with broad authority to legislate on all matters of public concern. MICH. CONST. 1963, art. 7, § 22; MICH. COMP. LAWS § 117.4j(3) ("Home Rule Cities Act" provides for the exercise of all

---

[1] Although Plaintiffs continue to argue that the stated standard only applies if the Ordinance is content neutral, an issue they dispute, the Supreme Court has recognized that public decency restrictions may be treated as content-neutral when based on attempts to regulate secondary effects. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434, 445 (2002); *City of Erie*, 529 U.S. at 289. On its face, the Ordinance expressly and exclusively attempts to regulate secondary effects.

municipal powers, regardless of whether they are expressly enumerated). Further, MICH. COMP. LAWS § 117.5h expressly permits cities to enact ordinances to regulate public nudity within city boundaries.

The Court next moves to the second prong of the analysis: whether the Ordinance serves a substantial governmental interest. In *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986), the Supreme Court held that a local government is not required to conduct its own studies on secondary effects before enacting an ordinance. Instead, it may rely upon any evidence "reasonably believed to be relevant" to the secondary effects, including evidence from previous judicial opinions, land use studies, or anecdotal reports. *Id. See also City of Erie*, 529 U.S. at 296; *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438 (2002). Secondary effects can include a diverse range of problems, including negative impacts on surrounding properties, illicit sexual behavior, litter, and urban blight. *See, e.g., City of Erie*, 529 U.S. at 290 (targeting "violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects"); *Deja Vu of* Cincinnati, 411 F.3d at 789-90 (citing *Richland Bookmart, Inc. v. Nichols ("Richland Bookmart I")*, 137 F.3d 435, 440 (6th Cir. 1998) (approving secondary effects of "[r]educing crime, open sex and solicitation of sex and preserving the aesthetic and commercial character of the neighborhood surround adult establishments)). Secondary effects evidence need not be local. *Renton*, 475 U.S. at 52-53; *Deja Vu of Cincinnati*, 411 F.3d at 791. The evidence also need not consist of empirical data or a scientific study. *See*

*Alameda Books*, 535 U.S. at 438; *City of Erie*, 529 U.S. at 300 (plurality opinion) (noting that the Supreme Court has "flatly rejected" the notion that empirical analysis trumps local legislative judgments). The party challenging the ordinance has the burden of disproving each secondary effect the regulation may serve. *Alameda Books*, 535 U.S. at 438-39 (describing challenger's burden). Citizen testimony alone may be sufficient to satisfy the "very little" evidence standard of *Alameda Books*. *See World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186, 1195 (9th Cir. 2004). Moreover, a city need not disprove a challenger's theories of secondary effects. *Alameda Books*, 535 U.S. at 437. While a city bears the burden of providing evidence that supports a link between adult operations and the asserted secondary effects, "it does not bear the burden of providing evidence that rules out every theory for the link . . . ." *Alameda Books*, 535 U.S. at 437.

In the instant case, the City of Grand Rapids expressly relied upon decisions of the Supreme Court and the Sixth Circuit, which have upheld each of the various restrictions set forth in the Ordinance, finding both sufficient evidence of secondary effects supporting the substantial governmental interest and that the relevant ordinances were narrowly tailored to meet that interest. Specifically, the City relied upon decisions of the Supreme Court upholding prohibitions of full nudity, as applied to sexually oriented businesses. *City of Erie*, 529 U.S. 277; *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1990). *See also Currence v. City of Cincinnati*, 28 F. App'x 438 (6th Cir. 2002). Similarly, the City cited Sixth Circuit decisions, in which the court has rejected challenges to regulations of semi-nude conduct in

7

a sexually oriented business, including a six-foot buffer zone separating patrons and performers. *DLS*, 107 F.3d at 408-13. Courts also have upheld proscriptions on dancer-patron touching. *Deja Vu of Nashville v. Metropolitan Gov't of Nashville and ?Davidson County*, 274 F.3d 377, 396-98 (6th Cir. 2001); *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248 (5th Cir. 1995). Further, open-booth regulations for adult arcades have been held constitutional. *See Bamon Corp. v. City of Dayton*, 923 F.3d 470 (6th Cir. 1991). Finally, the Sixth Circuit has repeatedly upheld hours of operation restrictions more restrictive than those in issue. *See Deja Vu of Cincinnati*, 411 F.3d at 789-92; *Richland Bookmart I*, 137 F.3d at 440-41; *Richland Bookmart, Inc. v. Nichols ("Richland Bookmart II")*, 278 F.3d 570 (6th Cir. 2002) (rejecting Equal Protection challenge to same statute).

While the Court at this time need not and does not reach the question of whether these and other prior controlling decisions render the Ordinance constitutional as a matter of law, *see Doughty v. City of Vermillion*, 118 F. Supp. 2d 819, 822 (N.D. Ohio 1998), *aff'd* 234 F.3d 1268 (6th Cir. 2000), at a minimum, the decisions constitute part of a legislative record that supports the City's findings and regulations. To challenge the Ordinance, Plaintiffs must demonstrate that the evidence supporting each of the City's findings of secondary effects is so insubstantial as to fail to support those findings. *See Alameda Books, Inc.*, 535 U.S. at 438; *Renton*, 475 U.S. at 51-52 (requiring only that municipalities rely upon evidence that is "reasonably believed to be relevant" to the secondary effects).

Plaintiffs argue that the Supreme Court's decision in *Alameda Books*, 535 U.S. at 434, permits them to challenge the substantiality of the City's findings by attacking the reliability of the studies and evidence upon which the City relied. They have offered the affidavit of Dr. Daniel Linz, who opines that the studies relied upon by the City of Grand Rapids and the courts in the cases cited in the administrative record are based on faulty methodologies. Assuming at this juncture that the burden-shifting analysis of *Alameda Books* applies in all cases, including those where the studies performed are directly relevant to the secondary effects found,[2] Plaintiffs at a minimum face a substantial hurdle to prove the insubstantiality of all of the City's secondary effects findings. As Justice Kennedy stated in *Alameda Books*, "courts should not be in the business of second-guessing fact-bound empirical assessments of city planners. [I]f inferences appear reasonable, we should not say there is no basis for [the municipality's] conclusion." *Id.* at 451-52. Defendants conceded at oral argument that the City need only have reasonable supporting evidence, not conclusive evidence, to support its determinations. *See Renton*, 475 U.S. at 51-52; *Alameda Books*, 535 U.S. at 438-39, 451. As a result, Plaintiffs' ability to undermine the City's secondary effects findings is, at best, limited.

---

[2]In *Alameda Books*, the municipality relied upon a study that did not directly support the secondary effect upon which the municipality based its ordinance. The Supreme Court held that municipalities were entitled to make reasonable inferences from evidence to reach a secondary-effect finding. However, the Court held that parties seeking to challenge the ordinance would be permitted to introduce evidence that directly challenged that inference. Arguably, the *Alameda Books* burden-shifting procedure does not apply when the studies upon which a city relies are directly supportive of the secondary effect found.

Third, the Plaintiffs cannot demonstrate that the City Ordinance is directed at regulating the erotic speech itself rather than the secondary effects of that speech. On its face, the Ordinances states its purpose and intent to regulate the secondary effects of sexually oriented businesses. To the extent Plaintiffs attempt to suggest that the City's real motivation in passing the ordinance was not to address the secondary effects but to accede to the religious and moral positions of certain individuals and to limit speech, their argument is foreclosed. The Supreme Court repeatedly has stated that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive." *City of Erie*, 529 U.S. at 292 (following *United States v. O'Brien*, 391 U.S. 367, 382-83 (1968), and *Renton*, 475 U.S. at 47-48).

Fourth, even assuming the argument is not entirely foreclosed by prior controlling case law, Plaintiffs will be hard-pressed to demonstrate that the Ordinance is not narrowly tailored to serve the substantial governmental interest in controlling secondary effects. The Supreme Court has held that, in order to be found narrowly tailored, an ordinance need not be the least restrictive means of addressing a city's substantial governmental interests. *See Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech restrictive alternative." *Id.*

The Supreme Court twice has recognized that a prohibition on full nudity similar to that described in the Ordinance had only a *de minimis* impact on the expressive element of nude dancing. *City of Erie*, 529 U.S. at 301 ("The requirement that dancers wear pasties and G-Strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message."); *Barnes*, 501 U.S. at 572 ("Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose."). Similarly, restrictions on the proximity of dancers to patrons and the "no-touch" rule have been found to be narrowly tailored to achieve a city's goal of preventing secondary effects. *See DLS*, 107 F.3d at 413 (finding six-foot buffer zone to be narrowly tailored) (citing cases); *Deja Vu of Nashville*, 274 F.3d at 396-97 (finding three-foot buffer and no-touch rule to "go[] no farther than necessary" to meet city's health and crime-prevention goals). The Sixth Circuit also has found that an open-booth requirement for adult arcades is narrowly tailored to address secondary effects. *See Richland Bookmart I*, 137 F.3d at 441; *Bamon Corp.*, 923 F.3d at 473-74. Finally, limitations on the hours of operation of sexually oriented businesses repeatedly have been found to be narrowly tailored. *See Deja Vu of Cincinnati*, 411 F.3d at 791; *Richland Bookmart II*, 137 F.3d at 441.

In sum, assuming for purposes of this decision that Plaintiffs are permitted to challenge evidence previously found by the Sixth Circuit and Supreme Court to be narrowly tailored to address a substantial governmental interest, Plaintiffs are unable to demonstrate

a substantially likelihood of success in doing so. Plaintiffs have demonstrated no more than a mere possibility of success on the merits. Accordingly, they are not entitled to a preliminary injunction barring enforcement of the Ordinance.

### III.

For the foregoing reasons, Little Red Barn's motion for continuation of stay of enforcement (Docket # 32), construed as a motion for preliminary injunction, and Sensations and Lady Godiva's concurrence in that motion (Docket #36) will be denied. An Order consistent with this Opinion shall be entered.


Date:     August 28, 2006            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE